# UNITED STATES DISTRICT COURT
for the

Northern District of Iowa

| | |
|---|---|
| United States of America<br>v.<br><br>Donald Franklin Trosin,<br>*Defendant(s)* | )<br>)<br>) Case No. 20-CR-4066<br>)<br>)<br>)<br>) |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __about May 2020__ in the county of __Clay__ in the __Northern__ District of __Iowa__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 1343 | Wire Fraud |

This criminal complaint is based on these facts:

See Attached Affidavit.

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Brett Lehnert, SBA Special Agent
*Printed name and title*

☐ Sworn to before me and signed in my presence.

☑ Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone or other reliable electronic means.

Date: August 7, 2020

_____
*Judge's signature*

Northern District of Iowa

KELLY K.E. MAHONEY, Chief U.S. Magistrate Judge
*Printed name and title*

STATE OF IOWA            )
                         )   Affidavit
COUNTY OF WOODBURY       )

1.      I, Brett Lehnert, being first duly sworn, on oath depose and state that I am a Special Agent with the Small Business Administration, Office of Inspector General (SBA-OIG), and have been since August 2019. Previously, I was employed as a Postal Inspector with the United States Postal Inspection Service (USPIS) since approximately April 2008. Before my employment with the USPIS, I was a Customs and Border Protection Officer from 1998 until 2008, including holding the title of Supervisory Customs and Border Protection Officer.

2.      As part of my duties as a Postal Inspector, I investigated crimes related to the mail system, including white collar crimes such as mail fraud, wire fraud, bank fraud, money laundering, and identity theft. Since my employment with the SBA-OIG, I have investigated crimes related to Small Business Administration ("SBA") loan fraud. I am authorized to apply for and execute search warrants and arrest warrants for offenses enumerated in Title 18 of the United States Code. I have participated in and directed investigations involving various types of criminal activity and, as a result of my training and experience, I am familiar with the tactics, methods, and techniques of committing these various types of fraud-related violations of federal law.

3.      The information in this affidavit is based upon my personal knowledge, as well as information learned from other law enforcement agencies, investigators,

1

witnesses, and documents. The facts set forth in this affidavit are based on my personal knowledge and information from others, including other law enforcement officers involved in this case, through interviews and reviews of loan documents, electronic files, emails, and other records and files related to this investigation. Since this affidavit is being submitted for the limited purpose of supporting an application for an arrest warrant, I have not included each and every fact known to me concerning this investigation, but I have set forth only those facts necessary to establish probable cause.

4. This affidavit is submitted for the purpose of establishing probable cause in support of an application to arrest DONALD FRANKLIN TROSIN (Trosin) for a violation of Title 18, United States Code, Section 1343 (Wire Fraud).

5. This affidavit contains only a summary of certain facts. I have not included every fact known to me or other investigators concerning the individuals and events described in the affidavit. Where statements of others are set forth in this affidavit, they are set forth in substance and not verbatim, unless specifically indicated otherwise.

## BACKGROUND

### *The Paycheck Protection Program*

6. The Coronavirus Aid, Relief, and Economic Security ("CARES") Act is a federal law enacted in late March 2020 that provides emergency financial assistance to the millions of Americans who are suffering the economic effects of the

2

COVID-19 pandemic. One form of such financial assistance is the authorization of up to $349 billion in forgivable loans to small businesses for job retention and certain other expenses, through a program referred to as the Paycheck Protection Program ("PPP"). Later, in April 2020, Congress authorized an additional $300 billion in PPP funding.

7. In order to obtain a PPP loan, a business submits a PPP loan application (SBA Form 2483), which must be signed by an authorized representative of the business. The loan application requires the business, through its authorized representative, to acknowledge the PPP program rules and to make certain affirmative certifications regarding its eligibility. In the application, the small business's authorized representative must also provide, among other things, the business's average monthly payroll expenses and number of employees. These figures are used to calculate the business's eligibility and the amount of money it may receive under the PPP. In addition, businesses applying for a PPP loan must provide documentation showing their payroll expenses.

8. A PPP loan application must be processed by a participating lending financial institution. If a PPP loan application is approved by the participating financial institution, that institution funds the PPP loan using its own monies, which are 100% guaranteed by the SBA. Participating financial institutions require that the information provided in PPP loan applications be truthful, including information about the applicant business's employees and payroll expenses, which is material to the financial institutions's approval and the terms of the PPP loans.

3

9. Information from the application, including information about the borrower, the total amount of the loan, and the listed number of employees, is transmitted by the lending financial institution to the SBA in the course of processing the loan.

10. PPP loan proceeds must be used by the business for certain permissible expenses – payroll costs, interest on mortgages, rent, and utilities. The PPP allows the principal and interest on the PPP loan to be entirely forgiven if the business spends the loan proceeds on these items within a designated period of time, usually within twenty-four weeks of receiving the proceeds, and if the business also uses at least 60% of the PPP loan proceeds for payroll expenses.

### *Economic Injury Disaster Loans*

11. The SBA's Economic Injury Disaster Loan ("EIDL") is a working capital loan that is available to small businesses. Eligible recipients may include small agricultural businesses, certain private non-profit organizations, faith-based organizations, and houses of worship, sole proprietors, independent contractors, and owners of rental property.

12. Unlike the PPP, EIDL applicants do not apply through a participating financial institution, but instead apply directly to the SBA's Disaster Assistance Program. Further, EIDL loans may be used to pay fixed debts, payroll, accounts payable, and other bills that could have been paid had the disaster not occurred.

13. The EIDL Advance ("the Advance") is for any entity that is eligible to apply for a COVID-19 EIDL. COVID-19 EIDL applicants may request to be considered for

4

an advance of up to $10,000. The disbursement amount will be determined by the number of the small business's employees before the COVID-19 disaster (*i.e.*, as of January 31, 2020). The Advance will provide the EIDL applicant with $1,000 per pre-disaster employee, up to a maximum of $10,000.

## THE SBA-LOAN FRAUD SCHEME

14. There is probable cause to believe that Trosin and at least one other person are involved in a fraudulent scheme to obtain and launder SBA loan moneys by means of wire fraud (and other federal crimes, including aggravated identity theft). As described in more detail below, Trosin has used accounts at two financial institutions, Bank-1 and Bank-2, to receive fraudulently obtained SBA-loan moneys, PPP and EIDL loan proceeds, respectively, and then wire those funds to one or more individuals involved in the fraudulent scheme.

15. At all relevant times, Trosin maintained accounts at Bank-1 and Bank-2. The deposits of Bank-1 and Bank-2 are each insured by the Federal Deposit Insurance Corporation (FDIC). Bank-1 is a national bank with branches throughout the United States, including within the Northern District of Iowa. Bank-2 is based in Spencer, Iowa, within the Northern District of Iowa, and has locations in Iowa and Nebraska.

16. In September 2019, Trosin opened an account ending in 6191 at Bank-1, as the sole owner of the account. Trosin provided a State of Iowa Driver's License and listed a mailing address for the account in Champlin, Minnesota.

17. At all relevant times, Trosin also maintained a joint account with A.K. at Bank-2 ending in 8387 and with an account address in Armstrong, Iowa, within the Northern District of Iowa. On July 31, 2020, a law enforcement officer interviewed A.K., who resides in Armstrong, Iowa. A.K. indicated she was previously in a relationship with Trosin but her name remained on a joint account with Trosin at Bank-2. A.K. indicated she no longer used this account, had unsuccessfully tried to remove her name from the account in the past, did not authorize Trosin to use her name for any SBA loan, and did not apply for any SBA loans.

*The PPP Loan*

18. On or about May 13, 2020, a SBA Form 2483 was completed and submitted for the benefit of a participating financial institution within the SBA's PPP program for the "Business Legal Name" of Donald Trosin, purportedly signed by Trosin, listing Trosin's Social Security Number (SSN) as both Trosin's SSN and as the business taxpayer identification number (TIN). The SBA Form 2483 stated Trosin's business had 120 employees on its payroll. Trosin was listed as owning 100% of the business.

19. In the SBA Form 2483, again purportedly signed by Trosin, the applicant certified, "All SBA proceeds will be used only for business-related purposes as specified in the loan application and consistent with the Paycheck Protection Program Rule." Further, the applicant certified, "The Applicant was in operation on February 15, 2020, and had employees for whom it paid salaries and payroll taxes or paid independent contractors, as reported on Form(s) 1099-MISC." The applicant

6

also certified, "The funds will be used to retain workers and maintain payroll or make mortgage interest payments, lease payments, and utility payments, as specified under the Paycheck Protection Program Rule; I understand that if the funds are knowingly used for unauthorized purposes, the federal government may hold me legally liable, such as for charges of fraud."

20. In conjunction with this PPP loan application, Internal Revenue Service (IRS) documents and a monthly bank statement from Trosin's account at Bank-1 were submitted as purported verification of the representations in the SBA Form 2483.

21. Specifically, an IRS Form 944, Employer's Annual Federal Tax Return for 2019, listed total compensation for "Donald Trosin" in the amount of $5,800,000. Further, Schedule C, Form 1040 or 1040-SR, Profit or Loss From Business for 2019, indicated wages of $5,760,000. The monthly bank statement, variously dated February 12 and 13, 2020, purports to show that Trosin was regularly receiving large incoming wire transfers from major companies in the United States and, on January 14, 2020, expended $480,356.00 in payroll for the January 1 through January 14, 2020 pay period, and then expended another $480,356.00 in payroll for the January 14 through January 28, 2020 pay period.

22. According to the Minnesota Secretary of State website, Donald Trosin Construction Equipment, LLC, was not incorporated until May 26, 2020, with a registered office in Albertville, Minnesota. The Minnesota Department of

7

Employment and Economic Development indicates, "No Employer Tax Account results were found for Donald Trosin Construction Equipment."

23. Bank-1 has provided the government with Trosin's true and correct monthly bank statement dated February 12, 2020. Comparing the true and correct statement received from Bank-1 with the statement submitted in conjunction with Trosin's PPP loan, it appears someone altered Trosin's actual monthly statement to add the entries about incoming wire transfers and payroll, described above. Trosin's true and correct monthly bank statement does not contain any entries for payroll to other individuals.

## *The EIDL Loans*

24. I have discovered approximately 20 EIDL applications, submitted to SBA, that appear related to Trosin in some manner. One of the applications is in the name of A.K.

25. On or about May 5, 2020, an EIDL application was filed in A.K.'s name. The application indicated the entity was a "Sole Proprietorship" established November 30, 2017, in the agriculture industry, with 11 employees. The agreed-upon amount of the loan was $30,000, less a $100 filing fee, with a net disbursement amount of $29,900 to the account ending in 8387 held jointly by A.K. and Trosin at Bank-2. On or about May 7, 2020, an EIDL Advance for this loan was wired from the SBA to Bank-2 in the amount of $10,000. On or about May 13, 2020, a Loan Agreement, Note, and Related Documents were e-signed, purportedly by A.K. On or about May

15, 2020, EIDL loan proceeds were sent via wire to the Bank-2 account in the amount of $29,900. As noted, A.K. has indicated to a law enforcement officer that she did not apply for any SBA loans.

## THE WIRES

26. On or about May 14, 2020, Trosin received a deposit of $1,200,000 from "Crb Bluevine Sba Loan Donald Trosin" into his account at Bank-1. These funds represented the proceeds of the PPP loan that was disbursed based upon the representations in the Form 2483 described above.

27. After receiving the $1,200,000 into his account at Bank-1, records received from Bank-1 show that Trosin initiated a series of wire transfers to various individuals at different banks in Virginia. Specifically, from about May 14, 2020, to about May 19, 2020, Trosin initiated wires in the amounts of $25,000 to Arizona, $50,000 to Pennsylvania, and $200,000 to Virginia. Further, on June 11, 2020, Trosin withdrew $300,020 from his account at Bank-1 to purchase two cashier's checks, each in the amount of $150,000, for an out-of-state limited liability company. On July 1, 2020, Trosin withdrew another $310,010 from his account at Bank-1 to purchase a $310,000 cashier's check in favor of the same limited liability company.

28. On or about May 8, 2020, Trosin initiated a wire transfer in the amount of $9,500 from his joint account with A.K. ending in 8387 at Bank-2 to Individual-4 at Bank-3 in San Antonio, Texas. On May 18, 2020, Trosin initiated a wire transfer in

9

the amount of $29,800 from Bank-2 to Individual-5 at Bank-4 in Kennesaw, Georgia. The wire included the statement, "God wins."

29. On or about May 19, 2020, an EIDL in the amount of $149,900 was deposited into Trosin's joint account with A.K. ending in 8387 at Bank-2. Thereafter, Trosin provided Bank-2 with handwritten instructions to wire $145,000 to Company-1 at Bank-5 in Yiwu, People's Republic of China. However, Bank-2 did not process this wire to Bank-5, returned the $149,900 to the SBA, and closed the joint account ending in 8387.

## THE INTERVIEW

30. On July 31, 2020, a law enforcement agent interviewed Trosin in Emmet County, Iowa. In the interview, Trosin stated he met Individual-1 on a dating website. Eventually, Individual-1 introduced Trosin to two men, Individual-2 and Individual-3. Individual-2 set up a limited liability corporation, Donald Trosin Construction Equipment, LLC (DTCE), for Trosin. Trosin confirmed that DTCE had no employees and DTCE did not receive any legitimate SBA loans. Trosin stated that Individual-2 applied for all of the SBA loans that Trosin received in his accounts at Bank-1 and Bank-2. Trosin did not apply for any of the loans but instead provided his banking and personal information to Individual-2 to allow Individual-2 to do so. Individual-2 then directed Trosin as to where to send the SBA loan funds once Trosin received those funds in his accounts at Bank-1 and Bank-2. Trosin stated he did not know any of the individuals to whom he sent the money and was not in contact with any of them.

10

31. Trosin stated that Individual-3 recently took over for Individual-2. Trosin admitted he knew the money he was sending to others came from SBA loans, because other individuals involved in the scheme told Trosin they were SBA loans. Trosin stated he did not receive any money himself for letting the other individuals in the scheme use his accounts.

## CONCLUSION

32. Based on the foregoing, my knowledge, training and experience, I respectfully submit there is probable cause to believe DONALD FRANKLIN TROSIN has committed a violation of Title 18, United States Code, Section 1343 (Wire Fraud).

I declare under penalty of perjury the foregoing is true and correct.

Brett Lehnert
Special Agent
Small Business Administration

Subscribed and sworn to me by phone and other reliable electronic means this 7th day of August, 2020.

KELLY K.E. MAHONEY
Chief United States Magistrate Judge
Northern District of Iowa