IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
WESTERN DIVISION

| UNITED STATES OF AMERICA, | ) | No. 20-CR-4066-LTS |
|---|---|---|
| Plaintiff, | ) | **SUPERSEDING INFORMATION** |
| vs. | ) | Count 1 |
| | ) | 18 U.S.C. § 1343: Wire Fraud |
| DONALD FRANKLIN TROSIN, | ) | |
| | ) | Count 2 |
| Defendant. | ) | 18 U.S.C. § 1031: Major Fraud |
| | ) | Against the United States |
| | ) | |
| | ) | Count 3 |
| | ) | 18 U.S.C. § 1956(h): Money |
| | ) | Laundering Conspiracy |

The United States Attorney charges:

## Count 1

## Wire Fraud

Introduction

*COVID-19 and the National Emergency*

1. According to the United States Centers for Disease Control and Prevention ("CDC"), Coronavirus Disease 2019 ("COVID-19") is a respiratory illness that can spread from person to person. The virus that causes COVID-19 is a novel coronavirus that was first identified during an investigation into a 2019 outbreak in Wuhan, China. COVID-19 can attack human lungs and kill infected persons, especially those who have certain risk factors identified by the CDC.

2. On March 13, 2020, President Donald J. Trump issued a Proclamation on Declaring a National Emergency Concerning the Novel Coronavirus Disease

(COVID-19) Outbreak ("the Emergency Proclamation"). The Emergency Proclamation noted that "on March 11, 2020, the World Health Organization announced that the COVID-19 outbreak can be characterized as a pandemic, as the rates of infection continue to rise in many locations around the world and across the United States." Further, "[t]he spread of COVID-19 within our Nation's communities threatens to strain our Nation's healthcare systems."

*The Paycheck Protection Program*

3. The Coronavirus Aid, Relief, and Economic Security ("CARES") Act is a federal law enacted in late March 2020 that provides emergency financial assistance to the millions of Americans who are suffering the economic effects of the COVID-19 pandemic. One form of such financial assistance is the authorization of up to $349 billion in forgivable loans to small businesses for job retention and certain other expenses, through a program referred to as the Paycheck Protection Program ("PPP"). Later, in April 2020, Congress authorized an additional $300 billion in PPP funding.

4. In order to obtain a PPP loan, a business submits a PPP loan application (SBA Form 2483), which must be signed by an authorized representative of the business. The loan application requires the business, through its authorized representative, to acknowledge the PPP program rules and to make certain affirmative certifications regarding its eligibility. In the application, the small business's authorized representative must also provide, among other things, the business's average monthly payroll expenses and number of employees. These

figures are used to calculate the business's eligibility and the amount of money it may receive under the PPP. In addition, businesses applying for a PPP loan must provide documentation showing their payroll expenses.

5. A PPP loan application must be processed by a participating lending financial institution. If a PPP loan application is approved by the participating financial institution, that institution funds the PPP loan using its own monies, which are 100% guaranteed by the Small Business Administration (SBA). Participating financial institutions require that the information provided in PPP loan applications be truthful, including information about the applicant business's employees and payroll expenses, which is material to the financial institution's approval and the terms of the PPP loans.

6. Information from the application, including information about the borrower, the total amount of the loan, and the listed number of employees, is transmitted by the lending financial institution to the SBA in the course of processing the loan.

7. PPP loan proceeds must be used by the business for certain permissible expenses – payroll costs, interest on mortgages, rent, and utilities. The PPP allows the principal and interest on the PPP loan to be entirely forgiven if the business spends the loan proceeds on these items within a designated period of time, usually within twenty-four weeks of receiving the proceeds, and if the business also uses at least 60% of the PPP loan proceeds for payroll expenses.

*Economic Injury Disaster Loans*

8.  The SBA's Economic Injury Disaster Loan ("EIDL") is a working capital loan that is available to small businesses. Eligible recipients may include small agricultural businesses, certain private non-profit organizations, faith-based organizations, and houses of worship, sole proprietors, independent contractors, and owners of rental property.

9.  Unlike the PPP, EIDL applicants do not apply through a participating financial institution, but instead apply directly to the SBA's Disaster Assistance Program. Further, EIDL loans may be used to pay fixed debts, payroll, accounts payable, and other bills that could have been paid had the disaster not occurred.

10. The EIDL Advance ("the Advance") is for any entity that is eligible to apply for a COVID-19 EIDL. COVID-19 EIDL applicants may request to be considered for an advance of up to $10,000. The disbursement amount will be determined by the number of the small business's employees before the COVID-19 disaster (i.e., as of January 31, 2020). The Advance will provide the EIDL applicant with $1,000 per pre-disaster employee, up to a maximum of $10,000.

*The Funnel Accounts*

11. At all relevant times, defendant DONALD FRANKLIN TROSIN maintained accounts at Bank-1 and Bank-2. Bank-1 is a national bank with branches throughout the United States, including within the Northern District of Iowa. Bank-2 is based in Spencer, Clay County, Iowa, within the Northern District of Iowa, and has locations in Iowa and Nebraska.

12. Specifically, in September 2019, defendant DONALD FRANKLIN TROSIN opened an account ending in 6191 at Bank-1, as the sole owner of the account. Defendant provided a State of Iowa Driver's License and listed a mailing address for the account in Champlin, Minnesota.

13. When he opened the account ending in 6191 at Bank-1, however, defendant DONALD FRANKLIN TROSIN already maintained a joint account with A.K. at Bank-2 ending in 8387. The account at Bank-2 ending in 8387 had an account address in Armstrong, Emmet County, Iowa, within the Northern District of Iowa.

<u>The Scheme to Defraud</u>

14. From about May 2020, through July 2020, in the Northern District of Iowa and elsewhere, and in relation to and involving a benefit authorized, transported, transmitted, transferred, disbursed, and paid in connection with, a presidentially declared major emergency (as those terms are defined in section 102 of the Robert T. Stafford Disaster Relief and Emergency Assistance Act, 42 U.S.C. § 5122), defendant did voluntarily and intentionally (1) participate in a scheme and artifice to defraud the United States with knowledge of its fraudulent nature and (2) obtain the money and property of the United States by means of false and fraudulent pretenses, representations, and promises ("the scheme to defraud").

<u>Manner and Means of the Scheme to Defraud</u>

15. It was part of the scheme to defraud that, on or about May 13, 2020, a SBA Form 2483 was completed and submitted for a $1.2 million PPP loan for the

"Business Legal Name" of defendant DONALD FRANKLIN TROSIN. The SBA Form 2483 was purportedly signed by defendant, listing defendant's Social Security Number (SSN) as both defendant's SSN and as the business taxpayer identification number (TIN). Defendant was listed as owning 100% of the business. The SBA Form 2483 falsely and fraudulently stated defendant's business had 120 employees on its payroll when, in truth, the business did not exist and defendant had no employees or any payroll expenses.

16. It was also part of the scheme to defraud that false and fraudulent documents were submitted in support of the PPP loan. Specifically, a false and fraudulent IRS Form 944, Employer's Annual Federal Tax Return for 2019, listed total compensation for "Donald Trosin" in the amount of $5,800,000. Further, Schedule C, Form 1040 or 1040-SR, Profit or Loss From Business for 2019, indicated wages of $5,760,000. A false and fraudulent monthly bank statement from Bank-1, dated in February 2020, purports to show that defendant DONALD FRANKLIN TROSIN was regularly receiving large incoming wire transfers for his business from major companies in the United States and had paid payroll expenses in excess of $900,000 during the month of January 2020. Again, in truth, defendant DONALD FRANKLIN TROSIN did not operate a business in January 2020 and had no payroll expenses for that month.

17. It was also part of the scheme to defraud that approximately 20 false and fraudulent EIDL applications were submitted to SBA in the name of defendant DONALD FRANKLIN TROSIN or A.K., the person with whom defendant held a

joint account at Bank-2. For example, on or about May 5, 2020, an EIDL application was filed in A.K.'s name. The false and fraudulent application indicated the fictitious entity A.K. was a "Sole Proprietorship" established November 30, 2017, in the agriculture industry, with 11 employees. The agreed-upon amount of the loan was $30,000, less a $100 filing fee, with a net disbursement amount of $29,900 to the account ending in 8387 held jointly by defendant DONALD FRANKLIN TROSIN and A.K. at Bank-2.

18. Finally, it was part of the scheme to defraud that, after receiving PPP and EIDL loans at Bank-1 and Bank-2, respectively, based on false and fraudulent representations to the SBA and its participating lenders, defendant DONALD FRANKLIN TROSIN conducted, and attempted to conduct, a series of smaller financial transactions to various entities and individuals in other states, Canada, and the People's Republic of China.

19. For example, after receiving $1,200,000 in PPP funds into his account at Bank-1, defendant DONALD FRANKLIN TROSIN initiated a series of interstate wire transfers to various individuals at different financial institutions. Specifically, from about May 14, 2020, to about May 19, 2020, Trosin initiated wires in the amounts of $25,000 to Arizona, $50,000 to Pennsylvania, and $200,000 to Virginia. Further, on June 11, 2020, Trosin withdrew $300,020 from his account at Bank-1 to purchase two cashier's checks, each in the amount of $150,000, for an out-of-state limited liability company. On or about July 1, 2020, Trosin withdrew another

7

$310,010 from his account at Bank-1 to purchase a $310,000 cashier's check in favor of the same limited liability company.

## Execution of the Scheme to Defraud

**Count 1:** On or about May 19, 2020, for the purpose of executing the scheme to defraud described above, defendant DONALD FRANKLIN TROSIN received an interstate wire in the amount of $149,000 from the SBA into his joint account with A.K. at Bank-2.

This was in violation of Title 18, United States Code, Section 1343.

## Count 2

## Major Fraud Against the United States

20. Paragraphs 1 through 19 are incorporated by reference here.

21. From about May 2020, through July 2020, in the Northern District of Iowa and elsewhere, defendant DONALD FRANKLIN TROSIN did voluntarily and intentionally participate in the scheme to defraud with knowledge of its fraudulent nature and obtain the money and property of the United States by means of false and fraudulent pretenses, representations, and promises.

22. The scheme to defraud was in connection with loans, guarantees, and other forms of federal assistance, including an economic stimulus, recovery, and rescue plan provided by the Government, and the value of such loans and a constituent part thereof was $1 million or more, specifically, the $1.2 million PPP loan and 20 false and fraudulent EIDL applications, as described above.

Execution of the Scheme to Defraud

**Count 2:** On or about May 19, 2020, for the purpose of executing the scheme to defraud described above, defendant DONALD FRANKLIN TROSIN received an interstate wire in the amount of $149,000 from the SBA into his joint account with A.K. at Bank-2.

This was in violation of Title 18, United States Code, Section 1031.

## Count 3
## Money Laundering Conspiracy

23. Paragraphs 1 through 19 are incorporated here.

24. From about May 2020, through July 2020, in the Northern District of Iowa and elsewhere, defendant did knowingly combine, conspire, and agree with other persons known and unknown to the United States Attorney to commit offenses in violation of Title 18, United States Code, Sections 1956(a)(1)(B)(i) and 1957(a), specifically,

(a) to knowingly conduct and attempt to conduct financial transactions affecting interstate commerce and foreign commerce, which transactions involved the proceeds of specified unlawful activity, that is, Wire Fraud in violation of 18 U.S.C. § 1343 as set forth in Count 1 above, knowing that the transactions were designed in whole or in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity, and that while conducting and attempting to conduct such financial transactions, knew that the property involved in the financial transactions represented the proceeds of some form of unlawful activity; and

(b) to knowingly engage and attempt to engage, in monetary transactions by, through or to a financial institution, affecting interstate and foreign commerce, in criminally derived property of a value greater than $10,000, that is Wire Fraud in violation of 18 U.S.C. § 1343 as set forth in Count 1 above, such property having been derived from a specified unlawful activity, that is, Wire Fraud in violation of 18 U.S.C. § 1343 as set forth in Count 1 above.

## Manner and Means

25. After receiving PPP and EIDL loans at Bank-1 and Bank-2, respectively, based on false and fraudulent representations to the SBA and its participating lenders, defendant conducted, and attempted to conduct, a series of financial transactions each in excess of $10,000, to various entities and individuals in other states, and countries including Canada and the People's Republic of China

26. Specifically, after receiving $1,200,000 in PPP funds into his account at Bank-1, defendant initiated a series of interstate wire transfers to various individuals at different financial institutions. From about May 14, 2020, to about May 19, 2020, defendant initiated wires in the amounts of $25,000 to Arizona, $50,000 to Pennsylvania, and $200,000 to Virginia. Further, on June 11, 2020, defendant withdrew $300,020 from his account at Bank-1 to purchase two cashier's checks, each in the amount of $150,000, for an out-of-state limited liability company. On or about July 1, 2020, defendant withdrew another $310,010 from his

account at Bank-1 to purchase a $310,000 cashier's check in favor of the same limited liability company.

This was in violation of Title 18, United States Code, Section 1956(h).


PETER E. DEEGAN, JR.
United States Attorney

By:  */s/ Timothy L. Vavricek*

TIMOTHY L. VAVRICEK
Assistant United States Attorney