UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

```
UNITED STATES OF AMERICA     .     Criminal No. 1:21mj52
                             .
     vs.                     .     Alexandria, Virginia
                             .     February 23, 2020
BENJAMIN SAKYI,              .     2:17 p.m.
                             .
             Defendant.      .
                             .
. . . . . . . . . . . .
```

TRANSCRIPT OF DETENTION HEARING
BEFORE THE HONORABLE MICHAEL S. NACHMANOFF
UNITED STATES MAGISTRATE JUDGE
(Via ZoomGov Videoconference)


APPEARANCES:

```
FOR THE GOVERNMENT:          CHRISTOPHER R. COOKE, SAUSA
                             United States Attorney's Office
                             2100 Jamieson Avenue
                             Alexandria, VA 22314


FOR THE DEFENDANT:           JOAN C. ROBIN, ESQ.
                             Law Office of Joni C. Robin PLLC
                             114 North Alfred Street
                             Alexandria, VA 22314


TRANSCRIBER:                 ANNELIESE J. THOMSON, RDR, CRR
                             U.S. District Court, Third Floor
                             401 Courthouse Square
                             Alexandria, VA 22314
                             (703)299-8595
```

**Government
Exhibit
2
Case
20-CR-4066-LTS**

(Pages 1 - 40)

(Proceedings recorded by FTR Gold electronic sound recording,
 transcript produced by computerized transcription.)

```
 1                          I N D E X

 2
                                        DIRECT      CROSS
 3
     WITNESS ON BEHALF OF
 4   THE GOVERNMENT:

 5   SA Michael Gentry, Jr.              8          14

 6

 7

 8

 9                          EXHIBITS

10                                   MARKED      RECEIVED

11   GOVERNMENT'S:

12   No. 2                                          14

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1        THE DEFENDANT:  Yes, sir.

2        THE COURT:  Thank you.  Very good.

3        And, Mr. Cooke, I assume you can see him, and you may

4  proceed.

5        MR. COOKE:  Thank you, Your Honor.

6                      DIRECT EXAMINATION

7  BY MR. COOKE:

8  Q.   Special Agent Gentry, could you please just state and

9  spell (inaudible)?

10  A.   I'm sorry, you cut off.  Could you repeat that?

11  Q.   Could you please state and spell your name?

12  A.   Yes.  Michael, M-i-c-h-a-e-l, Gentry, G-e-n-t-r-y.

13  Q.   And how are you employed?

14  A.   I am a special agent with the Internal Revenue Service,

15  Criminal Investigation.

16  Q.   And how long have you been so employed?

17  A.   Approximately almost seven years.

18  Q.   And can you just describe briefly some of your duties in

19  your employment?

20  A.   I conduct investigations involving violations of the --

21  Title 26, the Internal Revenue Code, as well as violations in

22  Title 18 related to the financial statutes.

23  Q.   Thank you.  And are you the primary agent assigned to the

24  matter in the court today?

25  A.   Yes, I am.

1   Q.   Okay.  Thank you.

2           As part of your investigation into the defendant's

3   conduct, did you review documents relating to the defendant

4   (inaudible)?

5   A.   Yes, I have.

6   Q.   Could you please tell us the name of the two businesses,

7   the defendant's two businesses that you are aware of?

8           THE COURT:  Mr. Cooke, I'm sorry to interrupt you,

9   but it's a little bit difficult to hear you, and it may be that

10  the audio on your device is breaking up.  If there's a way to

11  be close to the device, that may help.

12          MR. COOKE:  I'm also hearing, Your Honor, a little

13  feedback in the jail.  I, I know we've had that before.  It

14  echoes within the room and comes back to the microphone.

15          THE COURT:  Mr. Sakyi, if you can press the mute on

16  your button?  Very good, thank you.  That will -- that should

17  help us.

18          Go ahead.  You may proceed, Mr. Cooke.

19          MR. COOKE:  Thank you, Your Honor.

20  Q.   Special Agent Gentry, could you tell us the name of the

21  defendant's two businesses that you are aware of?

22  A.   Yes.  Blue Flight Logistics LLC and NKB Enterprise LLC.

23  Q.   And did you review bank accounts and other financial

24  documents for those businesses in your investigation?

25  A.   Yes, I did.

1  Q.    Is Mr. Donald Trosin one of the individuals that you

2  identified had transmitted funds to the defendant's businesses?

3  A.    Yes, he did.

4  Q.    Approximately how much money did Mr. Trosin send to

5  accounts controlled by the defendant?

6  A.    $910,000.

7  Q.    Did the defendant ever tell you how or whether he knew

8  Mr. Trosin?

9  A.    He stated he did not, did not know who Mr. Trosin was.

10  Q.    And based on your investigation, is that consistent with

11  what the defendant told other individuals about his relationship

12  with Mr. Trosin?

13  A.    No, it is not.

14  Q.    What do you know that he said about his relationship with

15  Mr. Trosin to other individuals?

16  A.    He represents other individuals, but Mr. Trosin had lent

17  money to, to Mr. Sakyi, and Mr. Trosin was holding some trucks

18  as collateral, and Mr. Sakyi was making monthly repayments of

19  $50,000.

20  Q.    All right.  In your investigation, did you observe any

21  instances in which the defendant or one of his businesses

22  transmitted funds to a Mr. **[FA]**, or businesses controlled by a

23  Mr. **[FA]**?

24  A.    Yes.

25  Q.    Could you please describe those transactions?

1  A.   From, from one bank account, one transaction involved two

2  $9,000 cashier's checks, and then another transaction was

3  conducted where a $40,000 cashier's check was purchased.  Those

4  were both -- all three of those cashier's checks were payable

5  to Fog Logistics, LLC, and then in another bank accounts, it

6  was a 20- -- I believe it was a $23,160 cashier's check that

7  was payable to **[FA]**.

8  Q.   Okay.  Are you aware of any charges against Mr. **[A]**?

9  A.   Yes, I am.

10  Q.   What, what do those charges involve?  What do you know

11  about those charges?

12  A.   He was indicted with a group of individuals in the

13  Southern District of New York for a money laundering

14  conspiracy, I think, and then wire fraud as well, and then

15  there were some additional charges as well.

16  Q.   Did those charges involve large sums of money, and were

17  those, were those, those sums of money moved offshore?

18  A.   Yes, that's my understanding.

19        MS. ROBIN:  Your Honor, I'm just going to object to

20  the leading nature of the question.  I recognize I'm a little

21  bit late on the uptake but --

22        THE COURT:  All right.  I'll overrule the objection,

23  but, Mr. Cooke, try and focus your questions in an appropriate

24  way.

25        MR. COOKE:  Understood, Your Honor.  Thank you.

1   Q.   Agent Gentry, is -- do you recall any of the countries to

2   which money was moved in the indictment that Mr. **[A]** is

3    involved?

4   A.   Yes.  The money was moved to Ghana.

5   Q.   Okay.  Have you reviewed in your investigation any travel

6   records for Mr. Sakyi, the defendant?

7   A.   Yes, I have.

8   Q.   Could you explain or describe any recent travel that the

9   defendant has engaged in?

10  A.   Yes.  I want to say from -- I think he departed the United

11  States late November of 2020 and then returned to the United

12  States on December 16, 2020, and flew out of the United States

13  on December 18, 2020, and returned on January 17 of 2021.

14  Q.   Okay.  Thank you.

15          And in your investigation, did you see if the

16  defendant moved any funds overseas himself in any of his

17  transactions?

18  A.    I do not recall any funds moving overseas in any of his

19  bank accounts.

20  Q.   Or if not through his bank accounts, did he make any

21  transactions with cashier's checks or any other type -- types

22  of money transfers to individuals or entities in other

23  countries?

24  A.   Yes.  There were some cashier's checks that he purchased

25  that were payable to Sure Good Foods Ltd., which is a company

1  based out of Canada.

2  Q.   Okay.  Just one last set of questions.  Special Agent

3  Gentry, I previously provided to the Court, to you, and defense

4  counsel a copy of an intake application, and that, that

5  document was an intake application for Blue Flight Logistics.

6  Did you see on that document who was, who was listed as the

7  owner?

8  A.   Yes, I did.  It was -- the owner was listed as **[EAD]**.

9  Q.   Okay.  And you reviewed Virginia state records for Blue

10 Flight Logistics?

11 A.   Yes, I did.

12 Q.   Do you recall what year the Virginia state records reflect

13 that that company was created?

14 A.   Yes.  It was 2018.

15         MR. COOKE:  Okay.  Your Honor, I think those are the

16 only questions that the government has at this time.  We would

17 move the document into evidence that's Exhibit 2.  We previously

18 provided that to Your Honor and to defense counsel via e-mail

19 given the situation.

20         THE COURT:  Thank you.

21 Ms. Robin, is there any objection to the admission of that

22 exhibit?

23

24         MS. ROBIN:  No, Your Honor.

25         THE COURT:  It will be admitted without objection.

1          (Government's Exhibit No. 2 was received in

2    evidence.)

3               THE COURT:  And, Ms. Robin, you may cross-examine.

4               MS. ROBIN:  Thank you.

5                         CROSS-EXAMINATION

6    BY MS. ROBIN:

7    Q.    Good afternoon, Agent.  You indicated that Mr. Sakyi had

8    never sent any cashier's checks or wired any money from these

9    accounts to Ghana, correct?

10   A.    That is correct.

11   Q.    Okay.  And the only, the only other country apart from

12   within the U.S. that money from his accounts are connected to

13   is the grocery store that is in Canada, correct?

14   A.    Yes.  There was a food (inaudible).

15   Q.    And -- but Mr. Sakyi has never traveled to Canada,

16   correct, at least from what you can tell of your review of the,

17   of the travel documents?

18   A.    That's correct.

19   Q.    Okay.  And the -- this money that you're talking about

20   that I guess is being exchanged allegedly among, among these

21   individuals, it originated from the fraudulent loan that

22   Mr. Trosin allegedly took out or a series of fraudulent loans

23   that Mr. Trosin allegedly took out, correct?

24   A.    Yes.  They were loans in Mr. Trosin's name, and then the

25   proceeds of the loan were deposited into his bank accounts.

1    Q.   Okay.  But with his full knowledge.  He was -- he's

2    allegedly a coconspirator who provided his information to

3    other -- to another individual in order for them to take out

4    these fraudulent loans, correct?

5    A.   That is correct.

6    Q.   Okay.  And Mr. Sakyi is not alleged to have been involved

7    in the fraudulent loan application process involving

8    Mr. Trosin, correct?

9    A.   That, that is correct.

10   Q.   Okay.  As I understand it from the affidavit, Mr. Trosin

11   met someone that's referred to as Individual 1, and that -- he

12   provided that person his identifying information, his bank

13   account information, and so forth in order to obtain these

14   loans, correct?

15   A.   That's correct.

16   Q.   Okay.  And Mr. Sakyi is not Individual 1, correct?

17   A.   Yes.  That would be, that would be accurate.

18   Q.   Okay.  And Mr. Trosin also was -- so he was getting, I

19   guess, allegedly getting communications from an Individual 1

20   and Individual 2 about where to send these proceeds, correct?

21   A.   That is correct.

22   Q.   Okay.  And Mr. Sakyi is not Individual 1 or 2, correct?

23   A.   No.  Not, not to our knowledge, no.

24   Q.   Okay.  And, in fact, law enforcement has seen, I imagine,

25   some sort of these texts where Individual 2 is communicating

1  with Mr. Trosin and advising him, you know, what individuals

2  and what companies to send these proceeds to, correct?

3  A.    Correct.

4  Q.    Okay.  And -- so to be clear, Mr. Sakyi owned two

5  businesses that received monies from Mr. Trosin, correct?

6  A.    That's correct.

7  Q.    But there are a number of individuals, several individuals

8  and companies that also received money from Mr. Trosin,

9  correct?

10 A.    That's correct.

11 Q.    Okay.  And to be clear, Mr. Sakyi's wife is not on any of

12 the bank accounts connected to any of these loan proceeds,

13 correct?

14 A.    Correct.

15 Q.    Okay.  She's not even an authorized signer on any of these

16 accounts, correct?

17 A.    That's correct.

18        MS. ROBIN:  The Court's indulgence?

19        Thank you.  I have no further questions.

20        THE COURT:  Thank you.

21        Mr. Cooke, is there any redirect?

22        MR. COOKE:  No, I don't think so, Your Honor.  No,

23 Your Honor.

24        THE COURT:  Thank you.

25        Agent Gentry, you may step down, which means that you

1   may go back on mute, and you may turn off your video if you

2   wish to do so.  Thank you.

3              THE WITNESS:  Thank you, Your Honor.

4              THE COURT:  Thank you.

5                        (Witness excused.)

6              THE COURT:  Mr. Cooke, does the government have any

7   other evidence it wishes to present with regard to detention?

8              MR. COOKE:  No, Your Honor.

9              THE COURT:  Thank you.

10             Ms. Robin, does the defense wish to present any

11  evidence with regard to the issue of detention?

12             MS. ROBIN:  Your Honor, we have no evidence, just

13  argument.

14             THE COURT:  Very good.  Then I'll hear first from the

15  government.  I'll hear your argument now.

16             MR. COOKE:  Thank you, Your Honor.  The government

17  believes that the preponderance of the evidence shows that the

18  defendant is a flight risk.  To begin with, he appears to have

19  no ties to Iowa, and the question is whether the defendant will

20  appear in Iowa, where he's going to be charged and where his

21  hearings will be held, not whether he has ties to the Eastern

22  District of Virginia.

23             In fact, he has much stronger ties to Ghana than

24  Iowa, where he's being prosecuted.  He spent almost two of the

25  past three months in Ghana, it sounds like.  As Agent Gentry